IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MARYLAND COMMISSIONER OF
FINANCIAL REGULATION,

    Plaintiff,

        v.                 CIVIL NO.: WDQ-11-0735

WESTERN SKY FINANCIAL,
LLC, et al.,

    Defendants.

* * * * * * * * * * * * * *

MEMORANDUM OPINION

In an administrative proceeding, the Maryland Commissioner of Financial Regulation ("CFR") ordered Western Sky Financial, LLC, Great Sky Finance, LLC, PayDay Financial, LLC, and Martin A. Webb ("defendants"), to cease and desist from lending money to Maryland customers. The defendants removed to this Court. For the following reasons, the CFR's motion to remand will be granted, and the defendants' motion to dismiss will be remanded.[1]

I. Background

The Maryland Office of the CFR ("OCFR") is an executive agency that enforces the Maryland Consumer Loan Law[2] ("MCLL") and

---

[1] As the parties have thoroughly briefed the issues, no hearing is necessary.

[2] The MCLL prohibits making loans without an OCFR license and lending money at an interest rate above the statutory maximum annual rate. Md. Code Ann. Fin. Inst. § 11-204; Com. Law § 12-103(a).

regulates lenders who lend money to Maryland residents. Md. Code Ann. State Gov't § 8-201; Bus. Reg. § 2-108; Office of the Commissioner of Financial Regulation, http://www.dllr.state.md.us/finance/ (last visited Oct. 4, 2011). The OCFR licenses lenders to make loans under the MCLL, adopts lending rules and regulations, and investigates and punishes violations of the MCLL and its regulations. *See* Md. Code Ann. Fin. Inst. §§ 2-114, 11-201 *et seq.*

To investigate violations and conduct proceedings, the CFR may "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production" of relevant evidence. Md. Code Ann. Fin. Inst. § 2-114(b). The CFR lacks enforcement power; it must petition a State circuit court to enforce subpoenas, and that court "may issue . . . an order requiring the person to appear before the commissioner . . . to produce documentary evidence . . . or to give evidence." *Id.* § 2-114(c)(1). The circuit court may punish failure to obey its order as contempt of court. *Id.* § 2-114(c)(2).

If the OCFR finds, after notice and a hearing (or waiver of both), that an entity has violated the MCLL or a rule or regulation, the CFR may issue a final cease and desist letter, revoke or suspend the entity's MCLL license, and impose a civil penalty up to $1,000 for the first violation and $5,000 for each

subsequent violation. *Id.* § 2-115(b). To enforce the penalties, the CFR must petition the circuit court to re-impose them, or for a temporary restraining order, injunction, rescission, restitution, or other just relief. *Id.* § 2-116(b).

The subject of an OCFR investigation may appeal the OCFR's decision to the circuit court. *Id.* § 11-218(a). That court may hear new evidence, reverse, affirm, or modify the decision. *Id.* § 11-218(b), (c); Md. Code Ann. State Gov't § 10-222(f).

Martin Webb, a member of the Cheyenne River Sioux Tribe who resides on the Cheyenne River Reservation, owns Western Sky Financial, LLC, Great Sky Finance, LLC, and PayDay Financial, LLC, internet-based loan companies. ECF No. 13 at 10. All the defendants reside on the Reservation. *Id.* The three companies state in their loan agreements that: (1) the agreement is subject to the exclusive laws of the Cheyenne River Sioux Tribe, (2) the debtor consents to the exclusive jurisdiction of the Cheyenne River Sioux Tribal Court, (3) the agreement is governed by the Indian Commerce Clause of the U.S. Constitution and Cheyenne River Sioux Tribe laws, and (4) the company is subject to the laws of no State. ECF No. 4 Ex. 1 at 4.

On February 15, 2011, after investigating several complaints about the defendant companies, the OCFR issued a summary cease and desist order ("the order") to the three companies and Martin Webb. ECF No. 9 Ex. 3. The order states

3

that, after investigating the defendants' business activities in Maryland, the OCFR had concluded that the defendants had engaged in "usurious and unlicensed lending to Maryland customers in violation of Maryland law." ECF No. 9 Ex. 3 at 2-3. In addition to requiring them to stop lending to Maryland residents, the order demanded that the defendants provide the OCFR with records of all their loans to Maryland residents. *Id.* Ex. 3 at 24-26. The order cited the laws and regulations that the OCFR had found the defendants had violated, and included the OCFR's findings of fact, and notice that the defendants were entitled to a hearing to contest the findings.[3] *Id.* Ex. 3 at 27.

The defendants requested a hearing and "Special Appearance to Seek Dismissal for Lack of Jurisdiction." ECF No. 9 Ex. 1 at 4. The OCFR responded that it would consider the request for dismissal within the administrative hearing on the alleged violations. *Id.* On March 18, 2011, the defendants removed to this Court. ECF No. 1.

On March 25, 2011, the defendants moved to dismiss for lack of jurisdiction. ECF No. 4. The CFR opposed the motion. ECF

---

[3] The order noted that if the defendants did not request a hearing, the OCFR could finalize the order, impose a "civil penalty up to $1,000 for a first violation and up to $5,000 for each subsequent violation," and "enter a final order declaring . . . that all consumer loan agreements entered into by the Respondents with Maryland consumers are illegal and unenforceable." ECF No. 9 Ex. 3 at 27.

4

No. 10. On April 18, the CFR moved to remand to the OCFR. ECF No. 9. The defendants opposed the motion. ECF No. 13.

II. Analysis

    A. The Motion to Remand

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2006). The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. This includes cases in which a federal right or immunity is an essential element of the cause of action, and a narrow class of cases in which "the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter." *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005).

A removing party bears the burden of showing that the district court has jurisdiction over the action. *Strawn v. AT&T Mobility, LLC,* 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 1994 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." *Mulcahey*, 29 F.3d at 151.

1. The Proceeding was not Brought in a State Court

The CFR argues that removal was improper because the action was brought in the OCFR, an executive agency, not a State court. ECF No. 9 Ex. 1 at 7. The Fourth Circuit has not defined "State court" as it is used in § 1441, but it has provided a framework for determining whether a State agency is a "State court" under the federal officer removal statute, 28 U.S.C. § 1442.[4] *See Kolibash v. Comm. on Legal Ethics of the W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989). Judges in the District of Maryland have applied the functional framework in *Kolibash* to cases removed under § 1441.[5]

Under the functional test, the Court must first "evaluate 'the functions, powers, and procedures of the state tribunal' in

---

[4] The federal officer removal statute authorizes removal of

> civil action[s] . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for any act under color of such office

28 U.S.C. § 1442(a)(1). Unlike the general removal statute, the federal officer removal statute should be construed broadly, not "frustrated by a 'narrow, grudging interpretation.'" *Kolibash v. Comm. on Legal Ethics of the W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989) (quoting *Willingham v. Morgan*, 392 U.S. 402, 407 (1969)).

[5] *See, e.g., Gottlieb v. Lincoln Nat'l Life Ins. Co.*, 388 F. Supp. 2d 574, 580 (D. Md. 2005); *Rockville Harley-Davidson, Inc. v. Harley-Davidson Motor Co.*, 217 F. Supp. 2d 673, 676 (D. Md. 2002).

order to consider whether the entity functions as a court."[6] If so, the Court next "consider[s] 'the respective state and federal interests in the subject matter and in the provision of a forum.'" *Id.* (quoting *Floeter*, 597 F.2d at 1102). Although the second inquiry is "more critical," an administrative agency is not the functional equivalent of a State court--and the Court must remand the case--unless the agency functions as a court *and* "federal interests predominate over state interests."[7] *Id.* at 677, 679.

        i.    The OCFR Does Not Function as a Court

An agency functions as a court when it "exercise[s] judicial power." *Rockville Harley-Davidson*, 217 F. Supp. 2d at 677. It exercises judicial power when: (1) it can enforce its subpoenas and orders, (2) its decisions have preclusive effect without further action by a State court, and (3) it can provide

---

[6] *Rockville Harley-Davidson*, 217 F. Supp. at 677 (quoting *Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979)).

[7] Although the standard is the same under both removal statutes, "a given state agency could be a 'State court' under the federal removal statute, and not a 'State court,' under the general removal statute" because the federal officer removal statute "inherently implicates overriding federal interests." *Wilson v. Gottlieb*, No. 11-1205, 2011 WL 4479846 at *12-13 (D. Md. Sept. 23, 2011) (Maryland Health Claims Alternative Dispute Resolution Office functioned as a State court under § 1442(a). Although "less court-like" than agencies held not courts in § 1441 proceedings, it was court-like enough to "bring it within the scope of the federal officer removal statute." The federal interest in controlling the *forum* in which federal officers are forced to answer for official action overcame the State's interest in the case).

substantial remedies and relief to injured parties. *Id.*;[8] *see also Gottlieb*, 388 F. Supp. 2d at 580.[9] That an agency is part of the court system makes it more likely to function as a court. *See Kolibash*, 872 F.2d at 576. That an agency's decisions are appealable to circuit court makes the agency less like a court. *Gottlieb*, 388 F. Supp. 2d at 580; *Rockville Harley-Davidson*, 217 F. Supp. 2d at 677.

That an agency "employs many of the same procedures as a court" is not dispositive. *Rockville Harley-Davidson*, 217 F. Supp. 2d at 677; *see also Gottlieb*, 388 F. Supp. 2d at 580. Agencies that "employ[] adjudicatory procedures," give an accused party "the opportunity to be heard in person, . . . the right to present documentary evidence and call witnesses," discovery, cross-examination, and pre-hearing motions do not

---

[8] Judge Motz held that the Maryland Motor Vehicle Administration ("MVA") did not function as a State court because the MVA could not enforce the subpoenas it issued or award monetary damages to claimants, its decisions lacked preclusive effect until ratified by a State court, and "the remedies or relief [the MVA] can provide are severely limited. Neither declaratory relief, injunctive relief, or monetary damages are available for violations of [the rule in question]." *Rockville Harley-Davidson*, 217 F. Supp. 2d at 677-78.

[9] Judge Bennett held that the Maryland Insurance Administration ("MIA") did not function as a State court because the MIA could not enforce its subpoenas, was not a forum for private causes of action (though claimants remained parties to enforcement proceedings), could not issue injunctive relief, and could not enforce its remedies and relief (which included issuing orders, revoking licenses, imposing civil penalties, and making limited restitution to claimants). *Gottlieb*, 388 F. Supp. 2d at 580-81.

function as State courts if they lack traditional judicial power. *Rockville Harley-Davidson*, 217 F. Supp. 2d at 677 (internal citation omitted).

Here, the OCFR has some "court-like" attributes, such as its ability to conduct hearings and issue subpoenas, but it does not function as a court. *See Gottlieb*, 388 F. Supp. 2d at 580. Like the MIA and MVA, the OCFR's limitations render it a "quintessential agency." *Rockville Harley-Davidson*, 217 F. Supp. 2d at 678.

The OCFR is an executive agency, not part of the judicial branch. Md. Code Ann. State Gov't § 8-201. Its primary duties are to issue licenses and *investigate* and *enforce* violations of the MCLL and of OCFR rules and regulations. *Id.* §§ 2-114, 11-201 *et seq.* Like the MIA, it is not a forum for private causes of action. *Gottlieb*, 388 F. Supp. 2d at 581.

The OCFR lacks enforcement power and must apply to Maryland circuit courts if a lender does not comply with its orders. Md. Code Ann. Fin. Inst. § 2-114(c)(1). Only the circuit court may hold a party in contempt or impose enforceable punishment or relief for violating the MCLL. *Id.* §§ 2-114(c)(2), 2-116(b). Further, the OCFR's decisions lack finality because they are subject to appeal and, on appeal, the circuit court may consider new evidence and modify the decision without remanding it to the OCFR. *Id.* § 11-218.

Like the MVA and MIA, the OCFR lacks "judicial power" and must apply to the circuit court for enforcement of its subpoenas and all remedies it orders other than revocation or suspension of a license. Md. Code Ann. Fin. Inst. § 2-115(b). Although the OCFR does not depend on the circuit court to enforce revocation or suspension of a license, a party may appeal the revocation or suspension, and the circuit court may hear new evidence and modify the OCFR's determination without remand. *Id.* § 11-218. As the OCFR does not function as a court, this case was not "brought in a state court" and must be remanded. *See* 28 U.S.C. § 1441(a).

### ii. Federal Interests Do Not Predominate

Maryland's interests in the subject of--and providing a forum for--this proceeding outweigh the federal interest in it. Maryland has a substantial interest in regulating lending within its jurisdiction and in providing a forum for enforcement of the MCLL and related rules. *Cf. Rockville Harley-Davidson*, 217 F. Supp. 2d at 679 (finding that Maryland has a "substantial" interest in regulating and providing a forum for disputes arising under its motor vehicle laws and regulations); *Gottlieb*, 388 F. Supp. 2d at 582 (finding that Maryland has a "substantial" interest in MIA's "established administrative process" and in providing the forum for that process).

Mere federal interest in the case's subject matter does not overcome a strong State interest. In federal officer removal cases, the government has an interest in the provision of a forum for the case—enumerated in § 1442(a)[10]—*and* the subject matter of the case—enumerated in the Supremacy Clause of the United States Constitution, *see, e.g., Wyoming v. Livingston*, 443 F.3d 1211, 1222 (10th Cir. 2006); *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982). Under the general removal statute, often "[n]o issue of federal law is involved," thus, State interests predominate. *See, e.g., Rockville Harley-Davidson*, 217 F. Supp. 2d at 679-80.

In this case there is a "deeply rooted" federal interest in "leaving Indians free from state jurisdiction and control." *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 168 (1973). Thus, the government has an interest in this case because it involves Maryland's regulation of an Native

---

[10] Under the federal officer removal statute, the federal interest in the case usually predominates because

> The central concern of the removal statute is that a federal officer or agent shall not be forced to answer for acts performed under color of his office *in anything but a federal forum*. . . . [I]t is the state's power to subject federal officers to the state's process that § 1442(a)(2) curbs.

*Kolibash*, 872 F.2d at 576 (emphasis added) (internal quotation marks and citations omitted).

11

American's activity on a reservation and elsewhere.[11] However, unlike federal officer immunity there is no federal interest in providing an exclusive forum for this kind of case. *See Kolibash*, 872 F.2d at 576.

Maryland has a substantial interest in regulating loans to its citizens and providing a forum for the process. Because the government has a federal interest in only one element of the proceeding, federal interests do not "predominate over state interests." *Rockville Harley-Davidson*, 217 F. Supp. at 677.

The OCFR is not the functional equivalent of a State court, and the removal was improper. *See id.* at 676.[12]

2. This Court Lacks Original Jurisdiction

The Court also lacks jurisdiction over this case. The defendants contend that the cease and desist order establishes federal question jurisdiction.[13] The OCFR asserts that the only

---

[11] The parties disagree about whether the *entire* activity took place on the reservation. See ECF No. 13 at 10; ECF No. 16 at 14-15. The Court need not resolve that dispute.

[12] If the "plain language" test adopted by the 9th Circuit applies, the OCFR is not a "State court" because it is an agency, and the Court must remand the proceeding. *See Or. Bureau of Labor & Indus. v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414, 417-18 (9th Cir. 2002) (holding that the term "State court" was clear and thus should be given its plain meaning without functional analysis).

[13] The defendants focus on why they are entitled to immunity. *See* ECF No. 13 at 10-12. The Court cannot reach that issue until it is satisfied that it has jurisdiction over the proceeding.

federal question in the proceeding is a defense which does not confer jurisdiction.

The district courts have original jurisdiction over cases in which a federal right or immunity is an essential element of the claim, and a narrow class of cases in which "the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter." *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005).

      i.    Federal Immunity is not an Essential Element of the Cease and Desist Order

Under the "essential element" form of federal question jurisdiction, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Generally,

> a case may *not* be removed to federal court on the basis of a federal defense *including the defense of pre-emption*, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Id.* at 393 (second emphasis added).[14]

---

[14] *See also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("[A] defense that relies on the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute, will not provide a basis for removal.").

13

A defendant's use of tribal immunity as a defense does not confer federal question jurisdiction. *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) (tribal immunity defense did not confer federal question jurisdiction on State suit to collect taxes on reservation sales of goods).[15] Instead, an essential element of the claim must depend on resolution of the federal issue. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *see also Ornet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806-07 (4th Cir. 1996).[16]

---

[15] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), is consistent with *Graham*. In *Grable*, there was federal question jurisdiction because an *element* of plaintiff's claim depended on the disputed meaning of a federal statute, and the action to quiet title, has "been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims." 545 U.S. at 315. In that case, the government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id*. *Graham* involved a *defense* based on federal immunity rather than a claim that depended on federal law. *See Graham*, 489 U.S. at 841. "Congress has expressly provided by statute for removal when it desired federal courts to adjudicate defenses based on federal immunities." *Id*. Without a law like the federal officer removal statute, there is no evidence that the government has a "direct interest in the availability of a federal forum" for the issue. *Grable*, 545 U.S. at 315.

[16] Contrary to the defendants' contention, *Ornet* does not mean there is federal question jurisdiction in any case whose resolution involves a question of federal law. *See* ECF No. 13 at 9. *Ornet* recognized that "[a]t bottom, [the court] must determine whether the dispute is one that Congress intended the federal courts to resolve." 98 F.3d at 807. *Ornet* involved a claim that depended on the interpretation of federal law, not a defense of federal immunity. *See id*. It does not support removal.

Here, the CFR's cease and desist order alleged violations of the MCLL, a Maryland law. ECF No. 9 Ex. 3 at ¶¶45-51. The order noted the anticipated defense of tribal sovereign immunity in the cease and desist order, but the defense does not create federal question jurisdiction. *See id.* ¶¶30-31 ("[The defendants] are not entitled to . . . tribal sovereign immunity, and their lending activities involving Maryland residents are subject to regulatory enforcement action by [the CFR]."); *Caterpillar*, 482 U.S. at 392. As the only federal issue raised is a defense, not an element of the claim, it does not confer federal question jurisdiction. *See Grable*, 545 U.S. at 315.

> ii. Tribal Immunity does not Completely Pre-Empt the Maryland Consumer Loan Law

Under the rarer form of federal question jurisdiction, *complete* federal pre-emption of State law, "any claim purportedly based on that pre-empted *state law* is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (emphasis added).[17] The "pre-emptive force of a statute [must be] so extraordinary that it converts an ordinary state common-law complaint into one

---

[17] In recognizing the power to remove on the basis of complete pre-emption, the Court emphasized that "it is . . . settled law that a case may *not* be removed to federal court on the basis of a federal defense, *including the defense of pre-emption*, even if the defense is anticipated in the plaintiff's complaint." *Caterpillar*, 482 U.S. at 393 (second emphasis added).

15

stating a federal claim." *Id.* Unlike ordinary pre-emption, which is not a basis for removal, "even if preemption forms the very core of the litigation," complete pre-emption is a "jurisdictional doctrine."[18] *Lontz*, 413 F.3d at 440-42; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

To determine whether federal law completely pre-empts the State law, the Court looks to "the *elements* of the state law causes of action . . . [to] determine whether resolution of [the] state law claims requires interpretation of [the pre-empting federal law]." *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991) (emphasis added). In addition, defendants "must establish congressional intent to extinguish similar state claims by making [a] federal cause of action exclusive." *Lontz*, 413 F.3d at 441.

The defendants argue that tribal sovereign immunity pre-empts the MCLL in this case.[19] However, the defendants' possible

---

[18] The Supreme Court has found complete pre-emption in only three statutes: ERISA § 502(a), Labor Management Relations Act § 301, and the National Bank Act. *Lontz*, 413 F.3d at 441. The Fourth Circuit has held that the Copyright Act, 17 U.S.C. § 301(a) completely pre-empts State law claims on copyright issues. *Id.*

[19] In support, they rely on arguments that tribal sovereign immunity applies to the MCLL proceedings. *See* ECF No. 13 at 10-12 (*citing Montana v. United States*, 450 U.S. 544, 565 (1981) (holding that State law does not apply to contracts made on reservations); *Williams v. Lee*, 358 U.S. 217, 220 (1959) (holding that State law does not apply to activities occurring exclusively on tribal land)).

entitlement to tribal sovereignty immunity does not establish complete federal pre-emption. *See Caterpillar*, 482 U.S. at 393.

Tribal immunity is not an impenetrable "barrier[] to the assertion of state regulatory authority over tribal reservations and members." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980). States may regulate tribal activity unless the regulation "unlawfully infringe[s] on the right of reservation Indians to make their own laws and be ruled by them," or "the exercise of [State authority is] pre-empted by federal law." *Id.* (internal quotation marks and citation omitted). Thus, ordinary pre-emption is more narrow than sovereign immunity, requiring immunity *and* a "federal law" that pre-empts State action.[20]

Here, the defendants have not identified a "federal law" that completely pre-empts the claim,[21] and they have not

---

[20] States are pre-empted--in the ordinary sense--from collecting taxes from activity on reservations and regulating activity that occurs entirely on the reservation. *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 341-43. However, the complete pre-emption that creates federal jurisdiction over a claim requires more than general pre-emption. *Caterpillar* 482 U.S. at 393.

[21] General statutes such as the Indian Commerce Clause do not satisfy the rigorous standard for finding complete pre-emption. *See Lontz*, 413 F.3d at 441; *Idaho v. Native Wholesale Supply Co.*, No. 08-396, 2009 WL 940731 at *2-3 (D. Idaho, Apr. 6, 2009) (Indian Commerce Clause does not express "Congress's intent to regulate the entire field of Native American commerce"). *White Mountain Apache Tribe*, 448 U.S. at 143-44 (citing the Indian Financing Act of 1974, 25 U.S.C. § 1451 *et seq.* as an example of a pre-empting federal law, and noting that "automatic exemptions

demonstrated that the Maryland Consumer Loan Law is so completely pre-empted that enforcement creates federal question jurisdiction. *Caterpillar* 482 U.S. at 393. The "elements of the . . . causes of action" here do not turn on interpretation of federal law. *See McCormick*, 934 F.2d at 535. The affirmative defense is insufficient to create federal subject matter jurisdiction. *See Caterpillar*, 482 U.S. at 393. The Court must remand the proceeding.

        3.    *Younger* Abstention Doctrine

As the Court lacks jurisdiction and must remand on that basis, it need not determine whether, if it had jurisdiction, it should remand on the basis of the *Younger* doctrine or in the Court's discretion.

      B.    The Motion to Dismiss

As the Court will remand the case to the OCFR, the motion to dismiss will be remanded with it.

III. Conclusion

For the reasons stated above, the CFR's motion to remand will be granted. The defendants' motion to dismiss will be remanded.

__10/12/11__
Date

William D. Quarles, Jr.
United States District Judge

---

as a matter of constitutional law are unusual" (internal quotation marks and citation omitted)).